**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jon Bradley Bartz,

Plaintiff,

v.

Federal Bureau of Investigation,

Defendant.

Civ. No. 19-1577 (NEB/BRT)

**REPORT AND RECOMMENDATION**

---

Jon Bradley Bartz, *pro se* Plaintiff.

Adam J. Hoskins, Esq., Assistant United States Attorney, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant's Motion to Dismiss. (Doc. No. 23.) Defendant argues that federal law bars Plaintiff Jon Bradley Bartz from possessing or receiving a firearm, and thus his lawsuit alleging violations of his Second Amendment and Due Process rights fails to state a claim. (*See* Doc. No. 24, Def.'s Mem. in Supp.) For the reasons that follow, this Court recommends that Defendant's Motion to Dismiss be granted, and Plaintiff's Complaint be dismissed.

## I. Background

Plaintiff was convicted of "Criminal Sexual Assault 3d Degree and Assault 4th Degree – Correctional Officer" in 2003 and 2005. (Doc. No. 1, Compl. Ex. 1 at 2.) As a consequence, Plaintiff's right to possess firearms was prohibited pursuant to Minn. Stat. § 624.713, subd. 1(10)(i), and 18 U.S.C. 922(g)(1). (*Id.*, Ex. 1 at 1–2.) On April 25, 2019,

a Minnesota state court granted Plaintiff's petition for the restoration of his right to possess and otherwise deal with firearms pursuant to Minn. Stat. § 609.165, subd. 1d. (*See id.*, Ex. 1.) The state court found that Plaintiff had "shown the 'good cause' necessary . . . to restore his ability to ship, transport, possess, receive, or otherwise deal with firearms," and that Plaintiff no longer presents a threat to public safety. (*Id.*, Ex. 1 at 2.) The state court then ordered that Plaintiff's right to possess or otherwise deal with firearms was "fully restored," and included instructions for the court to notify the Bureau of Criminal Apprehension and the National Criminal Background Check System so that those organizations could update their records accordingly. (*Id.*, Ex. 1 at 2–3.)

That same day, Plaintiff alleges that he attempted to purchase a firearm in Mankato, MN, and was denied on the basis of a criminal background check. (Compl. ¶ 8.) Plaintiff claims that he sent the Federal Bureau of Investigation ("FBI") an appeal and request for an explanation on April 26, 2019, but did not receive a response for six weeks. (*Id.* ¶ 9.) On May 3, 2019, Plaintiff submitted an application to his local police department for a permit to purchase a firearm, which was approved on May 15, 2019. (*Id.* ¶ 10, Ex. 4.) Then, on May 17, 2019, Plaintiff alleges that he attempted to purchase a handgun. (*Id.* ¶ 11.) That attempt to purchase was delayed, and then denied, again as the result of a criminal background check. (*Id.*) On May 21, 2019, Plaintiff claims he again requested a reason from the FBI for the denial but received only "a very generic response." (*Id.* ¶ 12.)

On May 24, 2019, Plaintiff alleges he sent the FBI a certified copy of the state court order restoring his right to possess firearms, a VAF application, and a set of

fingerprints. (*Id.* ¶ 13.) On June 6, 2019, Plaintiff claims that he received a letter responding to his queries and denying his appeals. (*Id.* ¶ 14, Ex. 5.) Specifically, that letter stated that

> [T]he FBI has obtained and reviewed an additional matching record containing state prohibitive information under Minnesota Statute 624.714, subd. 24, except when acting under the authority of other law, it is a misdemeanor for a person required to register as a predatory offender, by section 243.166, to carry a pistol whether or not the carrier possesses a permit to carry issued under this section. Based on further review, you are currently ineligible to possess or receive a firearm. The material you submitted does not nullify your transaction's prohibition because the restoration of rights does not apply to the Sexual Offender Registry record.

(*Id.*, Ex. 5 at 1.) Plaintiff claims that he sent a follow-up e-mail to the FBI on June 5, 2019, but that they have so far failed to respond. (*Id.* ¶ 17.)

Plaintiff filed the Complaint in this matter on June 14, 2019, asserting that the statute cited in the FBI's letter, Minn. Stat. § 624.714, is inapplicable to him because it "applies only to those who are wishing to CARRY a firearm on their Person," whereas Plaintiff wishes merely to possess a firearm. (*Id.* ¶ 15.) Plaintiff claims that the FBI has violated his rights under the Second Amendment by denying his background checks without cause, as well as his right to due process by not being responsive to his inquiries. (*Id.* ¶¶ 18, 19.) Plaintiff seeks an order (1) directing the FBI to update their records as to his status; (2) directing the FBI to issue him a new unique personal identification number; (3) fees and costs; and (4) monetary damages. (*Id.* ¶¶ 1–5.)

In a Report and Recommendation dated September 11, 2019, this Court recommended dismissal of the portions of the Complaint (1) seeking monetary relief, and (2) asserting claims against the "U.S. Attorney General" and the "United States Attorney

General MN." (Doc. No. 4 at 9.) That Report and Recommendation was adopted on October 17, 2019. (Doc. No. 7.) On June 5, 2020, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 23.) This Court issued a briefing order directing that Plaintiff's response to that motion was due on or before July 6, 2020. (Doc. No. 29.) Plaintiff has not filed a response.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim. The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558. Pro se complaints "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir.

2014). In analyzing a motion to dismiss under Rule 12(b)(6), "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018).

## III. Analysis

Defendant argues that Plaintiff's Complaint should be dismissed because despite his limited restoration of rights under Minnesota law, Plaintiff is still prohibited from carrying a firearm under Minn. Stat. § 624.714, subd. 24, and thus federal law bars him from possessing or receiving a firearm, and the FBI correctly determined that Plaintiff is ineligible to possess a firearm. Specifically, Defendant argues that Plaintiff is barred from possessing a firearm by 18 U.S.C. § 922(g)(1), which makes it unlawful for "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess or receive firearms or ammunition under federal law, as well as relevant court precedent, which requires that if there are any state-law restrictions on Plaintiff's right to possess or receive a weapon at all, Plaintiff remains per se ineligible to possess or receive a firearm under § 922 even if the state has restored some of his rights.

### A. Statutory and Regulatory Background

Addressing the present motion requires a short summary of relevant laws and regulations. The Brady Handgun Violence Prevention Act ("Brady Act"), Pub. L. 103-159, 107 Stat. 1536 (1993) (codified in part at 34 U.S.C. § 40901), amended the Gun Control Act ("GCA") and directed the Attorney General to establish a background check

procedure for determining whether an unlicensed prospective transferee of a firearm is prohibited under federal or state law from receiving a firearm. 18 U.S.C. § 922(t)(1). The Attorney General established the National Instant Criminal Background Check System ("NICS"), managed by the FBI Criminal Justice Information Services Division's NICS Section. 28 C.F.R. § 25.3. The Brady Act empowered the Attorney General to issue applicable regulations. Pub. L. 103(h), 107 Stat. 1542 (codified at 34 U.S.C. § 40901(h)). It also required any licensed importer, manufacturer, or dealer in firearms (i.e., the holder of a Federal Firearms License, or "FFL") to contact NICS to perform a background check before transferring most types of firearms. *See* 18 U.S.C. § 922(t)(1); 28 C.F.R. § 25.1.

For most traditional firearms transfers, the FFL initiates an NICS background check. 18 U.S.C. § 922(t)(1)(A) (requiring the licensee to contact NICS before completing the transfer); 28 C.F.R. § 25.6(a). NICS then verifies that the seller is licensed, conducts a search of databases for any records suggesting that the purchaser is prohibited from acquiring a firearm, and issues a determination that the transaction may proceed, is denied, or is delayed. 28 C.F.R. § 25.6(c). If NICS denies an FFL-initiated background check, an individual may file an administrative request for an explanation of the denial and, may file a written appeal with NICS challenging the denial. 28 C.F.R. § 25.10(a) and (d).

Where, as here, an individual is denied a firearm under this framework, he may also seek legal redress pursuant to 18 U.S.C. § 925A. That statute provides that –

Any person denied a firearm pursuant to subsection (s) or (t) of section 922

> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,
>
> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A.

**B. Plaintiff May Not Possess or Receive a Firearm Under Federal Law**

The Court now turns to Defendant's argument that this matter should be dismissed because despite Plaintiff's limited restoration of rights under Minnesota law, he is still barred from possessing or receiving firearms under federal law. Under 18 U.S.C. § 922(g)(1), it is unlawful for "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess or receive firearms or ammunition under federal law. The statute defines a "crime punishable by imprisonment for a term exceeding one year" as follows:

> What constitutes a conviction of such crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

The meaning of the final "unless" clause in § 921(a)(20) was clarified by the Supreme Court in *Caron v. United States*, 524 U.S. 308 (1998). There, Gerald Caron was convicted for violating 18 U.S.C. § 922(g)(1), which makes it unlawful for a person convicted of a crime punishable by more than one year of imprisonment to possess any firearm. *Caron*, 524 U.S. at 309. Caron's sentence was enhanced under 18 U.S.C. § 924(e), which mandates that a defendant with three violent felony convictions receive an enhanced sentence. Caron challenged that enhancement, arguing that a prior Massachusetts conviction should not have been a predicate offense because his rights had been restored, creating an exception. *Id.* at 311. The Supreme Court rejected that argument, concluding instead that the "unless clause" modified the exception. While Massachusetts law permitted Caron to possess rifles and shotguns, because of his past conviction, state law still barred Caron from possessing handguns outside his home or business. The Supreme Court held that the restriction on Caron's handgun possession rights was an express restriction on his ability to possess firearms that triggered the "unless clause," adopting an "all-or-nothing" position, under which:

> [A] state weapons limitation on an offender activates the uniform federal ban on possessing any firearms at all. This is so even if the guns the offender possessed were ones the State permitted him to have. The state has singled out the offender as more dangerous than law-abiding citizens, and federal law uses this determination to impose its own broader stricture.

*Id.* at 315. The Court explicitly rejected the dissent's position that the "plain meaning" of the statute triggers the "unless clause" only "when the State additionally prohibits those ex-felons from possessing firearms altogether." *Id.* at 318 (Thomas, J., dissenting). In other words, the Court held that a civil rights restoration that still curtails an individual's

possession of even one type of firearm entails a restriction that "expressly provides that the person may not . . . possess . . . firearms." *Id.* at 314 (quoting 18 U.S.C. § 921(a)(20)).

Here, the state statute in question does not prohibit Plaintiff from possessing a type of firearm, it prohibits him from carrying any firearm. *See* Minn. Stat. § 624.714, subd. 24. While the Eighth Circuit has not yet addressed whether such a restriction triggers the "unless clause" of § 921(a)(20), two other circuits have considered how that clause applies to individuals who are still subject to a state-law restriction on their right to carry a firearm despite a broad restoration of their civil rights.

For example, in *Van Der Hule v. Holder*, 759 F.3d 1043 (9th Cir. 2014), the plaintiff—a felon—had his civil rights restored but was still prohibited from receiving a concealed-weapons permit under Montana law. *Id.* at 1045. The Ninth Circuit held that such a restriction was sufficient to trigger the "unless clause," and found that as a consequence, the plaintiff was "forbidden to receive or possess a firearm under federal law." *Id.* at 1051. The court observed that "[a]lthough Montana has enacted only a time, place, or manner restriction on Van der hule's possession of handguns, Congress has adopted a single, national, protective policy, broader than required by state law. After *Caron*, no reasonable doubt persists about the meaning of the statute." *Id.* (internal citations and quotation omitted). Similarly, in *United States v. Sanford*, 707 F.3d 594 (6th Cir. 2012), the Sixth Circuit considered the case of a felon who had recovered some civil rights under Michigan law post-sentence, but was still barred from receiving a concealed-weapons permit. That court also concluded that the plaintiff's "ineligibility for a

concealed weapons permit restricts his ability to transport firearms sufficiently to trigger the 'unless clause.'"[1] *Id.* at 596.

This Court finds these cases persuasive. Here, Plaintiff—like the parties in *Van Der Hule* and *Sanford*, is a felon who has had certain of his civil rights relating to firearms restored. As in those cases, Plaintiff has also not achieved a complete restoration of his civil rights, which are still limited by Minn. Stat. § 624.714, the statute cited by the FBI in its June 5, 2019 letter to Plaintiff explaining why he was denied permission to purchase a firearm. (*See* Compl., Ex. 5.) That statute provides as follows:

> Except when acting under the authority of other law, it is a misdemeanor for a person required to register by section 243.166 to carry a pistol whether or not the carrier possesses a permit to carry issued under this section. If an action prohibited by this subdivision is also a violation of another law, the violation may be prosecuted under either law.

Minn. Stat. § 624.714, subd. 24.

According to the state court order provided by Plaintiff, Plaintiff was convicted of Criminal Sexual Assault 3rd Degree, the elements of which are set forth at Minn. Stat. § 609.344. Minn. Stat. § 243.166, the statute governing the registration of predatory offenders, requires that a person convicted under § 609.344 register as a predatory offender. *Id.* at subd. 1b(1)(iii). Accordingly, it follows that § 624.714, subd. 24—which bars individuals required to register as predatory offenders pursuant to § 243.166 from carrying pistols—prohibits Plaintiff from carrying a pistol in Minnesota.

---

1 The "unless clause" at issue in *Sanford* is actually located at 18 U.S.C. § 921(a)(33)(B)(ii), which concerns convictions for domestic violence specifically, but its language is identical to the "unless clause" in § 921(a)(20).

In his Complaint, Plaintiff does not dispute that Minn. Stat. § 624.714, subd. 24, applies to him. Instead, he asserts that "[t]he reasons for denying my right to purchase a firearm [are] invalid. MN stat 624.714 applies only to those who are wishing to CARRY a firearm on their Person." (Compl. ¶ 15.) But the question here is not whether Plaintiff does or does not wish to carry a pistol, it is whether Minnesota's restriction on his right to do so is sufficient to trigger the "unless clause" of § 920(a)(20), which in turn would prohibit Plaintiff from possessing a firearm at all under § 922(g)(1). This Court finds that the restriction imposed on Plaintiff by Minn. Stat. § 624.714, subd. 24, is sufficient to trigger the "unless clause" of § 921(a)(20) because "[t]he state has singled out [Plaintiff] as more dangerous than law-abiding citizens, and federal law uses this determination to impose its own broader stricture." *Caron*, 524 U.S. at 315. As a consequence, Plaintiff is forbidden from possessing or receiving firearms under federal law, and the FBI properly denied his attempts to purchase firearms when performing the required background checks. Accordingly, because Plaintiff cannot state a legal claim for the denial of his two attempted firearm purchases under § 925A, this Court recommends that Defendant's Motion to Dismiss be granted, and his Complaint be dismissed.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss **(Doc. No. 23)** be **GRANTED**, and

2. Judgment be entered accordingly.

Date: October 26, 2020

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).